UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS JOHN WILLLIAMS,

            Petitioner,

   v.

ALICE PAYNE,

            Respondent.

CASE NO. C00-1199-JCC

ORDER

      This matter comes before the Court from the Ninth Circuit Court of Appeals on order of remand for further proceedings. (Dkt. 86.) The Ninth Circuit reversed in part Judge Rothstein's acceptance of U.S. Magistrate Judge Monica Benton's Report and Recommendation ("R&R") denying Petitioner a writ of habeas corpus. (Dkt. 59.) This Court has received a second R&R (Dkt. 174), as well as Petitioner's objections to the R&R. (Dkt. 176-1.) After reviewing the materials submitted by Judge Benton and the Petitioner, as well as the complete record, and finding that oral argument is not necessary, the Court concludes that Petitioner's petition is hereby DENIED.

ORDER – 1

## I. BACKGROUND

In 1996, Petitioner was convicted by bench trial of five counts of first degree rape, five counts of first degree burglary, and one count each of first degree attempted rape, first degree robbery, first degree kidnaping, and taking a motor vehicle without permission. (Dkt. 32, Ex. 1.) Petitioner originally stated nine claims for federal habeas relief. (Dkt. 11.) In 2001, District Judge Barbara Rothstein adopted the magistrate's R&R denying Petitioner's claims and dismissing the action with prejudice. The Court denied two of Petitioner's claims on their merits and denied the remaining seven as unexhausted or procedurally defaulted. (Dkt. 59.)

Petitioner appealed the Court's judgment. (Dkt. 69; Dkt. 80.) In 2003, the Ninth Circuit issued a mandate that the Court's judgment was affirmed in part, reversed in part, and remanded for further proceedings. (Dkt. 86.) Specifically, the Ninth Circuit remanded Petitioner's witness recantation due process claim for further analysis of whether the claim is procedurally barred. The Ninth Circuit also reversed this Court's determination that two of Petitioner's claims were unexhausted: his claims that (1) his conviction was obtained by use of an impermissibly suggestive photo identification, and (2) he was denied effective assistance of counsel. *Williams v. Lambert*, No. 01-35951, 2003 U.S. Dist. LEXIS 15451 (W.D. Wash. July 31, 2003). The second R&R concludes that all three of these claims should be denied. (Dkt. 174-1.)

## II. STANDARD OF REVIEW

This Court reviews the record *de novo* when considering objections to a magistrate judge's R&R. *See* 28 U.S.C. § 636(b)(1). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).  A state court decision is contrary to Supreme Court precedent if the state court (1) arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronted facts that are materially indistinguishable from relevant Supreme Court precedent but arrived at an opposite conclusion. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A federal habeas court may not issue a writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 411).

### III. ANALYSIS

The Ninth Circuit remanded three of Petitioner's claims for reconsideration of whether habeas relief is warranted.  First is Petitioner's assertion that his convictions violated the Due Process Clause of the Fourteenth Amendment because a witness against him later recanted.  (Dkt. 11.)  Second is Petitioner's claim that he was convicted due to an impermissibly suggestive photo identification in violation of his due process rights.[1]  (*Id.*)  Third is Petitioner's contention that he was denied his Sixth Amendment right to effective assistance of counsel because his original trial attorney failed to hire a private investigator for nine months after he was arrested.  (Dkt. 32, Ex. 6.)

A. *Witness recantation due process claim*

Petitioner generally contends that his conviction was obtained via statements of a prison

---

[1]Although Petitioner does not specify the Constitutional basis of his first two claims, this Court construes his petition liberally.  *See United States v. Seesing*, 234 F.3d 456, 462-63 (9th Cir. 2000).

ORDER – 3

informant, who later recanted. (Dkt. 11.) The informant, Joseph McDaniels, and his wife, Sandra, both told police that Petitioner had confessed to them an incident involving victim J.J., which included rape, burglary, robbery, and taking a motor vehicle without permission. (Dkt. 32, Ex. 21 at 38-40.) Mr. and Mrs. McDaniels also claimed that Petitioner had boasted of a history of committing rape and robbery. (*Id.*) Finally, Mr. McDaniels told police that Petitioner had admitted to raping a girl at a bus stop (*id.*), which is consistent with the circumstances surrounding the rape and kidnaping of victim A.H. (*Id.* at 27-28.)

During Petitioner's DNA hearing, Mr. McDaniels was arrested on unrelated charges. Petitioner contends that Mr. McDaniels asked Petitioner's trial counsel and private investigator to visit him in jail, where he told them that the Seattle Police had coerced, threatened, and coached the statements he and his wife made against Petitioner. (Dkt. 11 at 5; Dkt. 32, Ex. 21 at 2-3.) Petitioner's counsel relayed this incident to the trial judge, but the judge refused to grant further hearings on Mr. McDaniels. (Dkt. 32, Ex. 21 at 8.) Petitioner was not able to obtain an affidavit from Mr. McDaniels recanting his statements to the police until four years later. (Dkt. 27.) The state courts refused to assess Petitioner's witness recantation claim on its merits because of this evidentiary delay and the fact that the trial court issued its verdict with knowledge of the recantation. (*See* Dkt. 32, Ex. 7, 13, 15, 18, 20.)

This Court adopted the magistrate's recommendation in her first R&R to dismiss this claim as barred by an independent and adequate state procedural requirement. (Dkt. 59.) Specifically, it found that Petitioner's failure to produce any admissible evidence of Mr. McDaniels's recantation in his first personal restraint petition ("PRP") justified the Washington State Court of Appeals' dismissal of his claim on state procedural grounds. It further concluded that Petitioner could not overcome the procedural bar by demonstrating either (1) cause for the failure to produce the affidavit and prejudice from the failure or (2) that the appeals court's ruling

was a fundamental miscarriage of justice.  (Dkt. 56 at 10-13.)

The Ninth Circuit remanded the claim to this Court for clarification of what state procedural rule the Washington courts relied on in dismissing the claim, and for determination of whether that rule is independent and adequate.  The Court finds that the rule relied on is independent and adequate.  Moreover, the Court concludes that even if Petitioner's claim was not procedurally barred, he would not be entitled to relief on the merits.

        1. Petitioner's claim is procedurally barred

In general, federal habeas review is precluded where the petitioner procedurally defaulted in state court pursuant to an independent and adequate state procedural rule.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *see also O'Sullivan v. Boerckel*, 526 U.S. 838 (1991).  In order to be independent and adequate, a state rule must be clear, consistently applied, and well-established at the time of a petitioner's purported default.  *Wells v. Maas*, 28 F.3d 1005, 1010 (9th Cir. 1994).  In addition, the state procedural rule must not be "interwoven with the federal law."  *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).

Here, both the state appeals court and the state supreme court dismissed Petitioner's witness recantation claim because his only evidence of the recantation was the hearsay statements made by Mr. McDaniels to Petitioner's trial attorney and private investigator.  Both courts cited the case of *In re Rice,* 828 P.2d 1086, 1092 (Wash. 1992), to invoke the state procedural rule that a petitioner must show that he has competent, admissible evidence to prove factual assertions in a personal restraint petition.  *See* WASH. R. APP. P. 16.7 (a)(2)(I).[2]  The Washington Supreme Court decided *In re Rice* seven years before Petitioner filed his first PRP in July 1999, and the opinion in that case clearly articulates the procedural rule applied to Petitioner's claim.

---

[2]A state court may invoke an express procedural bar by citing a state case which stands for a procedural rule.  *See, e.g., Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

ORDER – 5

Furthermore, Washington courts have consistently applied this procedural rule without exception up to and since Petitioner's default under the rule. (Dkt. 174-1 at 8.) Finally, given that this rule applies to the state PRP process, it is clearly not interwoven with federal law. Therefore, the admissible evidence requirement constitutes an independent and adequate state procedural rule and bars this Court from reviewing Petitioner's witness recantation claim.

A habeas petitioner can overcome a procedural default only by demonstrating cause for the default and actual prejudice from the alleged violation of federal law, or by demonstrating a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner cannot show cause for his delay in obtaining an affidavit from Mr. McDaniels. Petitioner filed his first PRP three years after the recantation was announced in court and nearly two years after his attorney specifically advised him to obtain an affidavit for the PRP. (*See* Dkt. 32, Ex. 19, Exhibit A.) Petitioner has not provided an objective, external reason for his failure to secure an affidavit during those years. *See id*. at 749-50. For the reasons described below in subsection 2, Petitioner also cannot demonstrate that a fundamental miscarriage of justice resulted from the state courts' dismissal of his claim on procedural grounds.

2. Alternatively, Petitioner's claim fails on its merits

Suppression of evidence amounts to constitutional violation only if it "undermines confidence in the outcome of the trial." *U.S. v. Bagley*, 473 U.S. 667, 678 (1985).[3] The recantation evidence in this case was not suppressed in the traditional sense. While the trial judge did refuse to hold a hearing on the recantation, Mr. McDaniels's statements to Petitioner's trial

---

[3]In his objections to the magistrate's second R&R, Petitioner characterizes his witness recantation claim as a *Brady* violation. (Dkt. 176-1 at 4.) The *Brady* rule applies to suppression of evidence by the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Since Petitioner charges that the Seattle Police made a deal with McDaniels without notifying the prosecutor (Dkt. 176-1 at 4.), *Brady* is inapposite.

ORDER – 6

counsel and private investigator were announced in open court prior to the verdict. The trial judge expressed concern about the coaching allegations, but noted that Mr. McDaniels's credibility had been an issue throughout the trial. (Dkt. 32, Ex. 21 at 6-7.)

Moreover, Mr. McDaniels's affidavit does not exonerate Petitioner. Consistent with the courtroom announcement, Mr. McDaniels's affidavit states that the Seattle Police offered him benefits for his statement against Petitioner, and that they assisted with the precise wording of his statement and with his sketch identification of Petitioner. (Dkt. 32, Ex. 17.) The affidavit does not, however, affirm that his statements regarding Petitioner's confession were false. Rather, as the magistrate described, the affidavit "seems designed to express dissatisfaction with the outcome of his cooperation agreement, and his subsequent treatment by the government after he gave the statement [against Petitioner]." (Dkt. 56 at 11.)

In addition, Mr. McDaniels's statement was not critical to the state's case against Petitioner. Mr. McDaniels's information was directly relevant to the incident involving victim J.J. and indirectly related to the incident involving victim A.H. J.J. described her attacker in a manner roughly consistent with Petitioner, and hair samples collected at the scene matched Petitioner's hair. (Dkt. 32, Ex. 21 at 25-27.) While Petitioner attempted to portray Mr. McDaniels as the perpetrator of this crime, the victim positively excluded him as her assailant. (Dkt. 21, Ex. 15 at 2.) As for the A.H. incident, the victim identified Petitioner as her assailant and DNA evidence linked him to the attack. (Dkt. 32, Ex. 21 at 27-29.)

Given the additional evidence against him, as well as the circumstances and the content of the recantation, Petitioner has not demonstrated that the recantation undermines confidence in his trial.

ORDER – 7

*B. Impermissibly suggestive photo identification due process claim*

Petitioner alleges that his convictions relating to one of the incidents were obtained by the use of an impermissibly suggestive photo identification. Specifically, Petitioner asserts that: "The state relied on a photo montage containing a photo of me in a reverse hospital gown, untied, exposing my whole chest and clearly sedated." (Dkt. 11 at 6.) Petitioner claims that the victim told different accounts to the Seattle Police and the defense investigator, and even stated that "they all look alike to me." (*Id*.) Petitioner also notes that the photo identification was the only evidence used to convict him of this incident. (Dkt. 176-1 at 7.)

This Court initially dismissed this claim as unexhausted and procedurally barred by state law. (Dkt. 56 at 13; Dkt. 59.) The Ninth Circuit reversed, finding that Petitioner's reference to the appeals court's decision in his petition for discretionary review put the state supreme court on notice as to the factual basis of Petitioner's photo identification due process claim. *Williams*, 2003 U.S. Dist. LEXIS 15451 at *4-5. Thus, since the claim was properly exhausted, it is not procedurally barred. This Court now addresses the merits of Petitioner's claim.

Admission of pretrial identification violates due process of law when the identification procedure creates "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Reliability of the identification is the linchpin in this analysis. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The relevant factors for determining the reliability of a pre-trial identification are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id*. These factors are weighed against the corrupting effect of the suggestive identification itself. *Id*.

ORDER – 8

The state court of appeals found that the photo montage was not inherently suggestive because the differences between Petitioner's photo and the others in the montage did not relate to any component of victim H.D.'s description of her assailant. (Dkt. 32, Ex. 7 at 13.) Police showed H.D. seven different montages of six photos each over the course of four different meetings. (Dkt. 32, Ex. 2.) Only the seventh montage contained Petitioner's photo, and he was the only person in that montage pictured with a mustache and wearing an open shirt. (*Id.* at 556.) Even though her assailant was clean shaven at the time of the attack (Dkt. 32, Ex. 7 at 13), H.D. identified Petitioner based on the shape of his face. (Dkt. 32, Ex. 2 at 556.) H.D. also stated that one of the men pictured in the first montage resembled her attacker, but was not her attacker because his eyes were different from her attacker's eyes. (*Id.* at 553.) H.D.'s focus on facial structure and eyes suggests that neither Petitioner's distinctive shirt nor facial hair influenced her identification of him.

The balance of factors support the reliability of H.D.'s identification of Petitioner as her attacker. H.D. testified that she had a good look at her assailant, and that he did not cover either his face or her face at any point during the twenty-minute attack. (Dkt. 32, Ex. 7 at 13.) When H.D. was shown the seventh montage, she became emotional, identified Petitioner's photo, and indicated that she had no doubt that he was her attacker. (Dkt. 32, Ex. 2 at 555.) Although at a pretrial hearing H.D. could not be certain which photo from the seventh montage she had previously selected, the trial court found that this was due to the fact that a year that had passed since she was originally shown the montage. (*Id.* at 556-7.) Considering the totality of the evidence, the state appeals court did not unreasonably apply the Supreme Court's reliability factors.

ORDER – 9

*C. Ineffective assistance of counsel claim*

Although Petitioner raised five separate factual allegations to support his claim that he was denied his Sixth Amendment right to effective assistance of counsel, only one claim included in his federal habeas petition is properly before the Court.[4]  (Dkt. 174-1 at 9-10.)  In this claim, Petitioner asserts that his first trial attorney was deficient because, for nine months after Petitioner was arrested, his attorney failed to hire an investigator to secure statements from witnesses who would have corroborated Petitioner's alibi.[5]  (Dkt. 32, Ex. 6.)  During this delay, Petitioner contends, all of his alibi witnesses disappeared.  (*Id*. at 14.)  Petitioner identifies four potential alibi witnesses: the mother, grandmother, and grandfather of his daughter, and his girlfriend at the time of four of the incidents.  (*Id*. at 15.)  Petitioner claims that the first three witnesses would have corroborated a general alibi that he was asleep with them and his daughter during the attacks.  (Dkt. 176-1 at 7.)  Petitioner also claims that his girlfriend would have testified that he was with her in a motel the night of the H.D. incident.  (*Id*.)

In order to prove ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was objectively unreasonable, and (2) the defective performance resulted in prejudice to Petitioner's case.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the

---

[4]This Court initially held that this claim was unexhausted and procedurally barred.  Similar to the photo identification claim, the Ninth Circuit found that the state appeals court's ruling was sufficient to put the state supreme court on notice as to the underlying facts of Petitioner's ineffective assistance of counsel claim.  The state appeals court discussed two ineffective assistance claims in its opinion (Dkt. 32, Ex. 7 at 10), and of these two claims, only one is present in Petitioner's federal habeas petition.  (Dkt. 11.)

[5]Petitioner's attorney filed an application for authorization of expert services at public expense that was rejected as inadequate by the trial court in August of 1994.  (Dkt. 32, Ex. 6 at 14-15.)  In January of 1995, Petitioner's attorney filed a subsequent application for public funds for investigative services.  The court accepted the application in February 1995.  (Dkt. 11, Attachments at 30-34.)

first prong, judicial scrutiny of counsel's performance must be highly deferential, allowing counsel wide discretion in making tactical decisions. *Id*. at 689. The second prong requires a showing of actual prejudice–it is not enough for Petitioner to show that the errors could have had some conceivable effect on the outcome of the proceeding. *Id*. at 693. The reviewing court need not address both prongs of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

The Washington Court of Appeals concluded that Petitioner had not demonstrated prejudice because there was no evidence in the record suggesting that he had a potential alibi. (Dkt. 32, Ex. 7 at 10.) Indeed, Petitioner's general statement in his objections to the magistrate's second R&R that he was asleep with his daughter, her mother, and her grandparents during the attacks is unpersuasive. DNA evidence linked Petitioner to four of the incidents. Although no DNA evidence was taken in the J.J. attack, hair samples and the victim's identification of Petitioner linked him to the crime. (Dkt. 32, Ex. 21 at 25-27.) Due to the overwhelming evidence against him, Petitioner's case was not prejudiced by his attorney's failure to secure these three witnesses.

Since the victim's identification of Petitioner was the only evidence against him in the H.D. incident (*see* Dkt. 32, Ex. 7; Dkt. 56 at 3), Petitioner's alibi that he was with his girlfriend in a motel the night of that attack carries some weight. As the magistrate's second R&R points out, however, Petitioner does not claim that his girlfriend would have placed him at a specific location at the precise time of the attack, or even that he never left the motel the entire night.[6] (Dkt. 174-1 at 13.) Given that the appeals court reasonably found H.D.'s identification of Petitioner reliable,

---

[6]Even without witness testimony, Petitioner could have provided the name or location of the motel so that its guest records for the night in question could have been investigated. There is no evidence in the record that Petitioner did so.

ORDER – 11

it was not unreasonable for the court to conclude that Petitioner was not prejudiced by his counsel's failure to secure his girlfriend as an alibi witness.[7]

*D. Petitioner is not entitled to an evidentiary hearing.*

Petitioner objects to the fact that he has not been granted an evidentiary hearing on his federal habeas petition. (Dkt. 176-1 at 2.) An evidentiary hearing is appropriate only if "(A) the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii)-(B).

With regard to his witness recantation claim, Petitioner fails both prongs of this test. The trial court was aware of Mr. McDaniels's recantation, and admissible evidence was discoverable had Petitioner exercised due diligence in obtaining an affidavit from Mr. McDaniels. Even if it was not possible for Petitioner to obtain an affidavit, the record shows that evidence of the recantation would not have led to Petitioner's acquittal. (Dkt. 32, Ex. 21.) Petitioner is therefore not entitled to a hearing on his witness recantation claim.

---

[7]Petitioner cites *Brown v. Myers*, 137 F.3d 1154 (9th Cir 1998), to support his argument that the failure to contact alibi witnesses constitutes prejudice, as well as unreasonable performance. (Dkt. 176-1 at 6-7.) Brown was convicted of attempted murder, largely based on eyewitness testimony from the victim's girlfriend and siblings. Brown's attorney never investigated his alibi claim and did not secure witnesses who would have corroborated Brown's testimony. Six years later, the district court held an evidentiary hearing in which four witnesses testified on Brown's behalf. Each reported that they had not been contacted by defense counsel and would have testified at trial if asked. Based on this testimony, the court concluded that Brown was prejudiced by his attorney's deficient performance. In the present case, although investigation of Petitioner's alibi was significantly delayed, it did take place, and no witnesses could be located to corroborate Petitioner's story. Petitioner does not claim in his habeas petition that any of his purported alibi witnesses would now testify on his behalf if given the opportunity. Petitioner's case is thus not analogous to *Brown*.

Petitioner presents no previously undiscovered facts in support of his other two claims. Therefore, he is not entitled to a hearing on either of them.

## IV. CONCLUSION

For the foregoing reasons, the Court ADOPTS the Report and Recommendation. Petitioner's petition is therefore DENIED. The Clerk is DIRECTED to send copies of this Order to Petitioner, Respondent, and Magistrate Judge Benton.

SO ORDERED this 29th day of November, 2006.

John C. Coughenour
United States District Judge

ORDER – 13