UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS JOHN WILLIAMS,

          Petitioner,

    v.

ALICE PAYNE,

          Respondent.

CASE NO. C00-1199-JCC

ORDER

      This matter comes before the Court on Petitioner Carlos John Williams' application for a Certificate of Appealability ("COA") of this Court's November 29, 2006 Order denying Petitioner's petition for a writ of habeas corpus (Dkt. No.181). Because the parties are familiar with the factual and procedural history of this case, it need not be recounted here except as is necessary to explain the Court's reasoning.

## I.      STANDARD OF REVIEW

      Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner may not appeal the denial of his habeas petition without a COA. 28 U.S.C. § 2253(c)(1). A court may not grant a COA unless the petitioner has made a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This standard requires that the petitioner demonstrate that "reasonable jurists could

ORDER – 1

1  debate whether (or, for that matter, agree that) the petition should have been resolved in a different

2  manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*

3  *v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

4       For those claims that have been decided on their merits, the COA determination requires a general

5  assessment of whether the Court's denial of habeas relief was reasonably debatable. Under AEDPA, a

6  habeas petition shall not be granted unless the relevant state court's adjudication of the claim: (1) resulted

7  in a decision that was contrary to, or involved an unreasonable application of, clearly established federal

8  law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

9  based on an unreasonable determination of the facts in light of the evidence presented in the state court

10 proceeding. 28 U.S.C. § 2254(d)(1)–(2). A state court decision is contrary to Supreme Court precedent if

11 the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of

12 law, or confronted facts that are materially indistinguishable from relevant Supreme Court precedent but

13 arrived at an opposite conclusion. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision

14 represents an unreasonable application of Supreme Court precedent if the state court identified the

15 correct legal principle, but unreasonably applied that principle to the facts of the case. *Id.* Even if the state

16 court's decision is contrary to, or an unreasonable application of, clearly established federal law, habeas

17 relief may still be denied absent a showing of prejudice. *See Early v. Packer*, 537 U.S. 3, 10-11 (2002)

18 (per curiam).

19      For those claims that have been denied on procedural grounds, a COA shall be issued when the

20 petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of

21 a denial of a constitutional right and that jurists of reason would find it debatable whether the district

22 court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

23 **II.   ANALYSIS**

24      Petitioner seeks leave to appeal this Court's order denying his three remaining habeas claims and

25 his attendant requests to hold evidentiary hearings in order to more fully develop the facts on his claims.

26 ORDER – 2

1  Petitioner also seeks leave to appeal this Court's decision not to appoint him substitute counsel after his

2  CJA attorney withdrew from representation.

3  **A.   *The denial of assistance of counsel claim***

4  Petitioner had been appointed counsel to represent him on the appeal before the Ninth Circuit.

5  Counsel withdrew from representation after the case had been remanded to this Court. Finding that the

6  interests of justice did not require appointment of counsel, the magistrate refused to appoint Petitioner

7  substitute counsel. (Dkt. No. 84.) Petitioner argues that the magistrate's decision represents a violation of

8  his constitutional right to effective assistance of counsel. (Dkt. No. 181 at 1-2, 4.)

9  There is no constitutional right to representation by counsel in habeas corpus proceedings.

10  *McCleskey v. Zant*, 499 U.S. 476, 495 (1991). In general, it is within the district judge's discretion to

11  appoint counsel to a financially eligible noncapital habeas petitioner if "the interests of justice so require."

12  18 U.S.C. § 3006A(a)(2)(B). Petitioner thoroughly presented his issues in his habeas petition (Dkt. No.

13  11) and his Objections to the Magistrate's Report and Recommendation (Dkt. No. 176-1). Thus, he had

14  demonstrated an understanding of his case and the ability to develop the necessary arguments in support

15  of his point of view. Because reasonable jurists would not disagree with the magistrate's conclusion that

16  appointment of counsel was not required, Petitioner may not appeal the ruling on this issue.[1]

17  **B.   *The witness recantation claim***

18  Petitioner states as grounds for this claim "denial of right to confront recanting witness" and

19  "conviction obtained by coerced confession." (Dkt. No. 11 at 3, 5.) He contends that a police informant,

20  Joseph A. McDaniels, made statements incriminating Petitioner under police coercion and threat of

21

22  ───────────────

   [1] There is some dispute as to whether a COA is required to appeal the denial of counsel during habeas proceedings.

23  *See Morris v. Dormire*, 217 F.3d 556, 558 (8th. Cir. 2000) (holding that the issue whether the district court abused its
   discretion in denying habeas petitioner's motion for appointment of counsel "does not require a certificate of

24  appealability"). The *Morris* court based its holding on the precedent of the Eighth Circuit, under which 28 U.S.C. § 2253(c)
   "address[es] only the sort of showing required for a petitioner to obtain appellate review of the merits of his or her claim for

25  habeas corpus or § 2255 relief." *Nichols v. Bowersox*, 172 F.3d 1068, 1070 n.2 (8th. Cir. 1999) (en banc). *Nichols* is not
   binding on this Court, however, and has never been relied upon by the Ninth Circuit.  Thus, the Court declines to apply its
   rule in the present case.

26  ORDER – 3

1    prosecution (Dkt. No. 11 at 5; Dkt. No. 32, Ex. 12 at 3) and that the trial judge erred by not holding a

2    hearing to take McDaniels' testimony after Petitioner's counsel announced to the court, on the last day of

3    the trial, that McDaniels had recanted his statements. (Dkt. No. 32, Ex. 12 at 3.) This Court rejected the

4    claim, holding that it was procedurally barred, and, alternatively, that it failed on the merits. (Dkt. No.

5    181 at 5-7.)

6         In general, federal habeas review is precluded when the petitioner has procedurally defaulted in

7    state court pursuant to an independent and adequate state rule. *See Coleman v. Thompson*, 501 U.S. 722,

8    749-50 (1991). A habeas petitioner can overcome a procedural default only by demonstrating cause for

9    the default and actual prejudice from the alleged violation of federal law, or by demonstrating

10   fundamental miscarriage of justice. *Id.* at 750.

11        The state courts and this Court cited the case of *In re Rice*, 828 P.2d 1086, 1092 (Wash. 1992),

12   to invoke the state procedural rule that a petitioner must show that he has competent, admissible evidence

13   to prove factual assertions in a habeas petition. Applying *In re Rice*, this Court dismissed Petitioner's

14   claim as procedurally barred because his only evidence of McDaniels' recantation was the hearsay

15   statements of Petitioner's trial attorney and private investigator. Petitioner does not contest that the

16   admissible evidence requirement constitutes an independent and adequate state procedural rule, and that

17   it barred this Court from reviewing his witness recantation claim. He argues instead that he has overcome

18   the procedural default.

19        Petitioner obtained an affidavit from McDaniels in 2000. (Dkt. No. 27.) According to this

20   affidavit, as well as to Petitioner's counsel's statement to the trial judge in 1996 (Dkt. No. 32, Ex. 21 at

21   3-4), McDaniels had been advised then by his counsel not to sign a recanting affidavit. Petitioner makes

22   no other attempt to explain the four-year delay in securing McDaniels' affidavit. Reasonable jurists would

23   not differ with this Court that Petitioner did not show cause for his failure to secure an affidavit in a

24   timely manner. Moreover, the affidavit does not exonerate Petitioner, but merely expresses McDaniels'

25   dissatisfaction with the results of his cooperation agreement with the Seattle Police. Thus, reasonable

26   ORDER – 4

1    jurists would not differ with this Court's assessment that Petitioner did not prove actual prejudice.

2            To fall under the fundamental miscarriage of justice exception, a habeas petitioner must show that

3    "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See*

4    *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To establish the requisite probability, the petitioner must

5    show that it is more likely than not that no reasonable juror would have convicted him in the light of the

6    new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

7            Reasonable jurists could not debate that Petitioner failed to make the *Schlup* showing. The

8    recanting affidavit does not exculpate Petitioner; McDaniels merely states that the police coached his

9    statement, and that he decided to testify against Petitioner because he was offered financial and other

10   incentives, which were later withdrawn. In addition to McDaniels' cooperating testimony, the prosecution

11   presented considerable evidence against Petitioner in both incidents allegedly confessed to McDaniels.

12   Although no DNA was collected in the J.J. incident, the victim described her attacker in a manner

13   consistent with Petitioner, and he could not be excluded as the source of the hair samples collected at the

14   crime scene. (Dkt. No. 32, Ex. 21 at 25-27.) McDaniels' fingerprints were lifted from victim's stolen car

15   and jewelry; McDaniels' wife stated that Petitioner tried to sell them to her husband. (*Id.* at 38-39.) While

16   Petitioner argued at trial that McDaniels perpetrated the crimes against J.J., the victim positively excluded

17   McDaniels as her attacker. (Dkt. No. 21, Ex. 15 at 2.) In the A.H. incident, DNA extracted from the

18   semen left by attacker matched Petitioner's DNA profile[2]; the victim also identified Petitioner as her

19   attacker from a photo montage. (Dkt. No. 31, Ex. 21 at 28-29.) Given all the evidence, reasonable jurists

20   could not debate that Petitioner would have been found guilty, even if McDaniels' recantation had been

21   known.

22           In sum, reasonable jurists could not debate that Petitioner failed to overcome the procedural

23   default set out in *In re Rice*. Because reasonable jurists would not differ in determining that the Court's

24   ───────────────────

25           [2]The chances of a random member of the population having a DNA profile identical to that generated from the
     collected sample was determined to be one in 130,000 to 180,000. (Dkt. No. 32, Ex. 21 at 34-35.)

26   ORDER – 5

1  ruling on the witness recantation claim was proper, Petitioner may not appeal the ruling on this claim.

2        **C.**      ***The impermissibly suggestive photo identification due process claim***

3        Petitioner contends that his conviction of the H.D. crimes was obtained by use of an impermissibly

4  suggestive photo identification. (Dkt. No. 11 at 6.) Admission of pretrial identification violates due

5  process of law when the identification procedure creates "a very substantial likelihood of irreparable

6  misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Manson v. Brathwaite*,

7  432 U.S. 98, 114 (1977). The relevant factors for determining the reliability of a pretrial identification

8  are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's

9  degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of

10  certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime

11  and the confrontation. *Manson*, 432 U.S. at 114. These factors are weighed against the corrupting effect

12  of the suggestive identification itself. *Id.*

13        This Court decided that the balance of the *Manson* factors supports the reliability of H.D.'s

14  identification of Petitioner as her attacker. H.D. had a good opportunity to observe her assailant, as he

15  did not cover either his face or her face at any point during the twenty-minute attack. (Dkt. No. 32, Ex.

16  21 at 18.) The attack took place between midnight and 1:30 a.m, but H.D. was awake and wearing her

17  eyeglasses. (*Id.*) The lights were on in the kitchen and the dining room, where the attack took place. (*Id.*

18  at 19.) Soon after the attack, H.D. gave a consistent, clear history of the events, although it was noted

19  that she frightened and upset. (*Id.*) H.D. described her attacker as a black male in his late 20's or early

20  30's, about 5 foot 10 inches, medium built, medium to dark skin tone, with no facial hair. (*Id.*) Over the

21  next six months following the attack, a Seattle Police detective showed H.D a total of seven photographic

22  montages of potential suspects, each consisting of six photographs. (Dkt. No. 32, Ex. 2 at 2-5.) He

23  instructed her to ignore the background of the photographs, to realize that hairstyles and hair colors may

24  change, and instead to concentrate on the facial features. (*Id.*) When shown the first montage, she stated

25  that a suspect resembled her attacker, but that his eyes were different than her attacker's eyes. (*Id.* at 3.)

26  ORDER – 6

1  Petitioner was pictured, unlike the other five suspects in the same montage, looking down, with a

2  mustache, and wearing an untied hospital gown backward (*Id.* at 6.) H.D. became emotional and

3  unequivocally identified Petitioner as her attacker when she saw his picture. (*Id.* at 5.) She declared that

4  she identified Petitioner based on the shape of his face. (*Id.*) Although H.D. was unable to tell during her

5  testimony at trial which photo she had selected from the montage in 1994, this Court attributed her

6  forgetfulness to the fact that a year had passed since the identification. (*Id.* at 6.)

7       Considering the totality of the evidence, reasonable jurists would not differ with this Court's

8  conclusion that H.D.'s identification of Petitioner had substantial guarantees of reliability and that the

9  corrupting effect of the particular clothing he was wearing, the fact that he was looking down, or that he

10  had a mustache, was minimal. Having determined that Petitioner has failed to make a substantial showing

11  of the denial of a constitutional right on this claim, the Court will not grant a COA on Petitioner's

12  impermissibly suggestive photo identification claim.

13       **D.**    ***The ineffective assistance of counsel claim***

14       Petitioner contends that his first trial attorney was deficient because he delayed for nine months

15  after Petitioner was arrested to hire an investigator to locate and secure statements from his alibi

16  witnesses.[3] (Dkt. No. 32, Ex. 6.) During this delay, Petitioner contends, all his alibi witnesses

17  disappeared. (*Id.* at 14.) To succeed on the ineffective assistance of counsel claim, Petitioner had to show

18  that (1) his counsel's performance was objectively unreasonable, and (2) the defective performance

19  resulted in prejudice to Petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the

20  first prong, judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. The second

21  prong requires Petitioner to prove actual prejudice, and not merely that the errors could have had some

22  conceivable effect on the outcome of the proceeding. *Id.* at 693. The reviewing court need not address

23

24      [3]Petitioner's attorney filed an application for authorization of expert services at public expense in August 1994; the application was rejected as inadequate by the trial court. (Dkt. No. 32, Ex. 6 at 14-15.) In January 1995, Petitioner's

25  attorney filed another application for public funds for investigative services. The court accepted the application in February 1995. (Dkt. No. 11, Attachs. at 30-34.)

26  ORDER – 7

1    both prongs of the inquiry if an insufficient showing is made on one component. *Id.* at 697.

2    Petitioner identified four potential alibi witnesses: the mother and the maternal grandparents of his

3    daughter, and his girlfriend at the time of four of the incidents. (Dkt. No. 32, Ex. 6 at 15.) Petitioner

4    claims that the first three witnesses would have corroborated a general alibi that he was asleep with them

5    and his daughter during the attacks.[4] (Dkt. No. 176 at 7.) Petitioner claims that his ex-girlfriend would

6    have testified that he was with her in a motel the night of the H.D. incident. (*Id.*)

7    Petitioner's general allegation that he was asleep with his daughter and her family was found

8    unpersuasive by this Court given the evidence against Petitioner in the M. Th., S.L., M. Tr., J.J., and

9    A.H. incidents. In four of these incidents DNA evidence was collected, and it matched Petitioner's DNA.

10   (Dkt. No. 32, Ex. 21 at 12, 17, 24, 29, 34-35.) Although no DNA evidence was collected and the victim

11   never saw her attacker's face in the J.J. incident, the victim's description of her attacker matched

12   Petitioner, the hair samples analysis could not exclude Petitioner as the source, and Petitioner confessed

13   the incident to McDaniels. (*Id.* at 26-27.) Given all this evidence, reasonable jurists would not differ with

14   this Court's conclusion that counsel's delay in hiring a private investigator to locate his daughter's

15   mother and maternal grandparents did not result in actual prejudice to Petitioner.

16   Reasonable jurists would also not differ with this Court's conclusion that counsel's delay in hiring

17   a private investigator to locate Petitioner's ex-girlfriend did not result in actual prejudice to his case. The

18   victim's identification of Petitioner as her attacker was the primary evidence against him in the H.D.

19   incident. Petitioner claims that he was in a motel room with his ex-girlfriend on the night of the H.D.

20   incident. However, he does not claim that his girlfriend would have placed him with her at a motel at the

21   precise time of the attack, and he offers no other evidence that he stayed in a motel that night. In fact,

22   Petitioner does not even indicate the name or the location of the motel he allegedly stayed with his ex-

23   ──────────────

24   [4]Petitioner was inconsistent regarding the incidents for which his first three witnesses would have provided him an alibi. Petitioner contended at trial that the witnesses would have provided him with alibi for the J.J. incident. (Dkt. 11, Ex. "Endorsement of State's Witnesses and Exhibits and Defense Witness and Exhibit List.") In his direct appeal he merely

25   alleged that Cynthia Wright, the mother of his daughter, was a "very important alibi witness" with whom "he was residing . . . while rearing his daughter." (Dkt. 32, Ex. 6 at 16.)

26   ORDER – 8

1   girlfriend. Consequently, reasonable jurists would agree that, even if counsel's delay in securing the alibi

2   witness was objectively unreasonable, Petitioner did not prove actual prejudice.

3           Because Petitioner failed to demonstrate that reasonable jurists would debate that his counsel's

4   alleged ineffectiveness did not cause him actual prejudice, this Court needs not address the other prong of

5   the *Strickland* analysis. The Court declines to issue a COA.

6   **E.       *The evidentiary hearing issue***

7           Petitioner contends that he should have been granted an evidentiary hearing on his habeas corpus

8   claims. (Dkt. No. 176 at 2, 10-11.) An evidentiary hearing is appropriate only if "(A) the claim relies on

9    . . . a factual predicate that could not have been previously discovered through the exercise of due

10  diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing

11  evidence that but for the constitutional error, no reasonable factfinder would have found the applicant

12  guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

13          Petitioner argues that he is entitled to an evidentiary hearing because he adduced newly

14  discovered evidence in support thereof. (Dkt. No. 181 at 5.) This newly discovered evidence, Petitioner

15  contends, proves that the Washington State Patrol Crime Lab forensic scientist involved in Petitioner'

16  case was terminated from his position in 2000, for misconduct in another case.[5] (*Id.* at 5-6.) However, the

17  forensic scientist's termination from his position for misconduct in an unrelated case, several years after

18  Petitioner had been convicted, does not undercut the evidence against Petitioner. As Petitioner presents

19  no previously undiscovered facts relevant to Petitioner's claims, reasonable jurists would agree that he is

20  not entitled to an evidentiary hearing. Because no reasonable juror would find that this Court's decision

21  to deny evidentiary hearings was debatable, Petitioner may not appeal the ruling on this issue.

22

23

24          [5] Petitioner had filed with this Court a Motion to Introduce Exculpatory Facts in Support of Habeas Corpus Relief
    Relevant to DNA (Dkt. No. 160), which the magistrate judge denied on the ground that Petitioner failed to demonstrate the
25  existence of any exculpatory facts. (Dkt. No. 171.) Even if the Motion to Introduce Exculpatory Facts is liberally construed
    as a motion to amend Petitioner's habeas petition, he does not request a COA as to his new claim. (*See* Dkt. No. 181.)
26  ORDER – 9

1   **IV.     CONCLUSION**

2       For the foregoing reasons, Petitioner's motion for the issuance of a COA is DENIED.

3       SO ORDERED this 9th day of March, 2007.

4

5

6

7       John C. Coughenour
        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER – 10